**UNITED STATES of America,**
**Appellee,**

v.

**Bruno RAMIREZ, Defendant–**
**Appellant.**

**No. 08–2771–cr.**

United States Court of Appeals,
Second Circuit.

April 1, 2009.

Israel Arana, Coral Gables, FL, for Appellant.

Glen G. McGorty, Assistant United States Attorney (Jeffrey A. Brown and Andrew L. Fish, Assistant United States Attorneys, on the brief), for Lev L. Dassin, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: Hon. WILFRED FEINBERG, Hon. CHESTER J. STRAUB, and Hon. REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Defendant Bruno Ramirez was convicted, after a jury trial, of conspiracy to commit money laundering, *see* 18 U.S.C. § 1956(h), and conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine, *see* 21 U.S.C. §§ 841(b)(1)(A), 846, and was sentenced principally to 63 months' imprisonment. Ramirez appeals, challenging (1) the sufficiency of the evidence, (2) the receipt into evidence of expert testimony, and (3) the district court's decision to give a conscious avoidance charge. The government cross appeals, arguing that Ramirez's sentence is infected by procedural error in the calculation of his Sentencing Guidelines range.

1. *Sufficiency of the Evidence*

Ramirez does not contend that the government failed to offer sufficient proof of the existence of the charged money laundering and drug trafficking conspiracies. He challenges only the sufficiency of the evidence to prove his knowing and intentional joinder in these schemes. *See United States v. Santos*, 541 F.3d 63, 70–71 (2d Cir.2008).

In making this argument, Ramirez bears a heavy burden because, although we review sufficiency challenges *de novo*, we must view the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. *United States v. Hassan*, 542 F.3d 968, 980–81 (2d Cir.2008); *United States v. Tran*, 519 F.3d 98, 105 (2d Cir.2008). To reverse, we must conclude that "no rational factfinder could have found the crimes charged proved beyond a reasonable doubt." *United States v. Tran*, 519 F.3d at 105 (internal quotation marks omitted). That is not this case.

A defendant's membership in a charged conspiracy may be proved entirely by circumstantial evidence, *see, e.g., United States v. Huezo*, 546 F.3d 174, 180 (2d Cir.2008), and the government is not required to "exclude every possible hypothesis of innocence," *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997) (internal quotation marks omitted). Applying these principles to this case, we conclude that the jury could easily have inferred Ramirez's knowing and intentional participation in the money laundering conspiracy from evidence that (1) he drove his livery cab to a gas station that was the appointed location for a transfer of drug proceeds; (2) while he then had no passenger in his cab, he had almost half a million dollars in cash in a suitcase in the cab's trunk; (3) upon meeting an undercover agent (who was expecting to receive the drug proceeds) at the gas station, Ramirez and the undercover exchanged a pre-arranged code-word; (4)

Ramirez engaged in conversation with the undercover indicating a concern about being observed during the transaction; (5) Ramirez removed the cash-filled suitcase from the trunk and gave it to the undercover; and (6) he confirmed that "[i]t's all there" in response to the agent's question, "Everything's in there, right, five?" [1]

■ Ramirez's knowing and intentional participation in the drug conspiracy could be inferred from this evidence as well as from proof that (7) after the money transfer, Ramirez drove his livery cab to the building from which a call arranging for the gas station meeting had been placed; (8) a man exited the building and, after a brief conversation with Ramirez, placed a box containing five kilograms of cocaine in the trunk of his cab; (9) Ramirez employed circuitous and evasive driving techniques to travel to a location in Queens; (10) there, he flashed his headlights at an approaching Honda sedan; (11) after a brief conversation with the Honda driver, Ramirez opened the trunk of his cab to allow the driver to remove the box filled with cocaine.

Although Ramirez denied membership in the charged conspiracies, testifying that he was working as a livery cab driver at the time and did not specifically recall the events at issue, a reasonable jury was free to disbelieve defendant's account because of his demeanor on the witness stand, *see United States v. Lumpkin,* 192 F.3d 280, 289 (2d Cir.1999) (citing demeanor as factor relevant to jury's assessment of credibility), the incongruity of his story, or both. For example, the fact that Ramirez

did not pick up or drop off any passengers throughout the evening was not typical behavior for defendant while on duty. Further, Ramirez's testimony that delivery of packages to third parties without an accompanying passenger was common was at odds with his prior statement to government officials denying ever delivering packages or suitcases without a passenger present.

Finally, in an analogous case, this court observed that "jurors are entitled, and routinely encouraged to rely on their common sense and experience in drawing inferences," and "common sense and experience would support an inference that the principals in [a large] conspiracy would not have trusted an outsider [ ]with no knowledge of their criminal purpose[ ] to transport" hundreds of thousands of dollars in cash and drugs. *United States v. Huezo,* 546 F.3d at 182.[2] Based upon the evidence presented at trial, a reasonable jury could have drawn such an inference.

Accordingly, we reject Ramirez's sufficiency challenge as without merit.

### 2. Conscious Avoidance Instruction

Ramirez contends that no conscious avoidance charge was warranted in this case. "The propriety of a jury instruction is a question of law that we review *de novo.*" *United States v. Wilkerson,* 361 F.3d 717, 732 (2d Cir.2004) (internal quotation marks omitted). A conscious avoidance instruction is properly given

(i) when a defendant asserts the lack of some specific aspect of knowledge required for conviction, and (ii) the appropriate factual predicate for the charge

---

1. The suitcase was purported to contain $500,000, and in fact contained $489,690.00.

2. This case is readily distinguishable from *United States v. Samaria,* 239 F.3d 228, 239 (2d Cir.2001), *abrogated on other grounds by*

*United States v. Huezo,* 546 F.3d at 180 n. 2, because the conspirators never entrusted the livery driver in that case with actual or constructive possession of the contraband at issue.

exists, *i.e.*, the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.

*United States v. Aina–Marshall*, 336 F.3d 167, 170 (2d Cir.2003) (internal quotation marks and citations omitted).

■ Applying this standard here, we conclude that a conscious avoidance charge was warranted. First, Ramirez has asserted both in the district court and on appeal that he did not know that the suitcase and box he transported contained, respectively, drug proceeds and drugs. We have held that where a defendant acknowledges possession of contraband "but denies having known of the nature of the items, a conscious avoidance charge is appropriate in all but the highly unusual—perhaps non-existent—case." *Id.* at 171. Second, the evidence outlined above would have permitted a jury to conclude that, if Ramirez did not have actual knowledge of the contents of the suitcase or the box, he "was aware of a high probability" that those boxes contained the proceeds of illegal activity and drugs, but "consciously avoided confirming that fact." *Id.* at 170. Indeed, there is "nothing inappropriate or inconsistent" in the government arguing actual and constructive knowledge in the alternative. *United States v. Carlo*, 507 F.3d 799, 802 (2d Cir.2007); *see United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir.2003) (observing that evidence supporting inference of actual knowledge "will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct" (internal quotation marks omitted)).

Ramirez does not urge otherwise on appeal. Instead, he notes that conscious avoidance can only support the element of knowledge, not intent. *See United States v. Reyes*, 302 F.3d 48, 54 (2d Cir.2002). The challenged instruction, however, is not to the contrary. Accordingly, we identify no merit in Ramirez's challenge.

### 3. *Expert Testimony*

■ Ramirez submits that the district court erred in allowing Detective Frank DiGregorio to offer expert testimony as to the structure and conduct of international money laundering conspiracies because such testimony made the jurors "forget the weakness of the government's case." Appellant's Br. at 32.

Because the admission of expert testimony is committed to the broad discretion of the District Court, we review its judgment only for manifest error. *See United States v. Wexler*, 522 F.3d 194, 204 (2d Cir.2008). Where, as in this case, a defendant fails to object to the testimony at trial, our review is narrower still and limited to plain error. *See United States v. Johnson*, 529 F.3d 493, 501 (2d Cir.2008).[3] If we identify such error, we must then determine whether that error was harmless, and, in doing so, we consider "(1) the strength of the Government's case; (2) the degree to which the statement was material to a critical issue; (3) the extent to which the statement was cumulative; and (4) the degree to which the Government emphasized the inadmissible evidence in its presentation of its case." *United States v. Mejia*, 545 F.3d 179, 199 (2d Cir.2008).

On appeal, the only specific testimony Ramirez identifies as problematic is DiGregorio's statement that, in his experi-

---

3. As the government notes, to the extent Ramirez did object to certain questions during the examination of DiGregorio, those objec-

tions were sustained, with the exception of one objection not relevant to this appeal. Gov. Br. at 29–30 & n.*.

ence, those seeking to launder drug proceeds often use cars "that do not stand out" to make money deliveries, including "[o]ccasionally ... using liveries," *i.e.,* "black car service vehicles," because they "fit right into a neighborhood" and "nobody thinks twice about a livery being parked in front of their business or their store." Trial Tr. at 53; Appellant's Br. at 32. Even if we were to identify plain error in the admission of such testimony, *cf. United States v. Mejia,* 545 F.3d at 195 (holding that expert-agent's testimony regarding, *inter alia,* "the ways that MS–13 members traveled when fleeing from prosecution or when transporting contraband" was inadmissible because it addressed "matters that the average juror could have understood had such factual evidence been introduced"), we would find it harmless because the testimony was not relevant to the key contested issue before the jury, namely, whether Ramirez *knew* what he was transporting. It was not disputed before the jury that, consistent with DiGregorio's testimony, Ramirez's livery cab was in fact being used by members of the charged conspiracy to deliver drug money and cocaine; the only question was whether (1) Ramirez permitted such use knowingly and with the intent to further the conspiracies, or whether (2) conspirators arranged such use without Ramirez's knowledge. Moreover, we note that the government did not rely upon this aspect of DiGregorio's testimony in summation. We therefore reject Ramirez's challenge to the admission of this testimony.

### 4. *Sentencing Cross–Appeal*

■ The government submits that Ramirez's sentence is infected by procedural error, specifically, the district court's refusal to calculate defendant's Guidelines range based on the $500,000 in narcotics proceeds and five kilograms of cocaine that he delivered in his livery cab. *See United*

*States v. Cavera,* 550 F.3d 180, 190 (2d Cir.2008) (*en banc*) (identifying erroneous Guidelines calculation as procedural error). We review a district court's interpretation of the Guidelines *de novo* and its findings of fact for clear error. *See United States v. Reyes,* 557 F.3d 84, 87 (2d Cir.2009); *United States v. Snow,* 462 F.3d 55, 72 (2d Cir.2006).

In declining to calculate Ramirez's Guidelines range by reference to the amount of drugs or money he actually transported, the district court explained that (1) the trial evidence failed to indicate Ramirez's awareness of these quantities, and (2) it did not wish to "disturb" the jury's specific finding that "[l]ess than 500 grams" of cocaine was the amount "within the scope of criminal activity jointly undertaken by [Ramirez] and reasonably foreseeable to" him. Trial Tr. at 659; Sent. Tr. at 24, 36. We conclude that this was procedural error.

At sentencing, "[t]he applicable Guidelines range is normally to be determined in the same manner as before *Booker/Fanfan.*" *United States v. Crosby,* 397 F.3d 103, 112 (2d Cir.2005). Thus, "[j]udicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker,*" *United States v. Garcia,* 413 F.3d 201, 220 n. 15 (2d Cir.2005), including facts relating to drug quantity, *see, e.g., United States v. Jones,* 531 F.3d 163, 175 (2d Cir.2008), provided that, as a result of such findings, "the judge does not impose ... a sentence that exceeds the statutory maximum authorized by the jury verdict, or ... a mandatory minimum sentence under § 841(b) not authorized by the verdict." *United States v. Vaughn,* 430 F.3d 518, 527 (2d Cir.2005). With that caveat, the sentencing court is not bound by the drug quantity determination reached by the jury when making its Guidelines calculation. *See, e.g., United*

*States v. Worjloh,* 546 F.3d 104, 110–11 (2d Cir.2008).

The appropriate course here would have been to calculate Ramirez's base offense level with the aid of U.S.S.G. § 1B1.3(a)(1)(A), which directs that a defendant's offense level must be calculated with reference to, *inter alia,* "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and specifically notes that, "[w]ith respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved," without regard to whether the quantities were either actually known or "reasonably foreseeable" to him. U.S.S.G. § 1B1.3(a)(1)(A) & app. n. 2; *see also Id.* Ill. n. (a)(1) ("[A] defendant who transports a suitcase knowing that it contains a controlled substance . . . is accountable for the controlled substance in the suitcase regardless of his knowledge or lack of knowledge of the actual type or amount of that controlled substance."). This pertains whether the defendant is convicted of a substantive or conspiracy offense. *See United States v. Castrillon,* 376 F.3d 46, 47 (2d Cir.2004); *United States v. Chalarca,* 95 F.3d 239, 243 (2d Cir.1996); *see also United States v. Gutierrez–Herrera,* 293 F.3d 373, 376 (7th Cir.2002) (citing cases). Here, it was stipulated that the box delivered by Ramirez contained 5.036 kilograms of cocaine. *See* Trial Tr. at 363. Thus, pursuant to U.S.S.G. § 1B1.3(a)(1)(A), Ramirez's Guidelines calculation under U.S.S.G. § 2D1.1(c) should have been made using at least 5.036 kilograms of cocaine as the relevant drug quantity.

The Guidelines miscalculation in this case is a "significant procedural error" that would generally require remand for resentencing. *See United States v. Salim,* 549 F.3d 67, 72 (2d Cir.2008). However, the Supreme Court has written that, in determining whether a remand is appropriate, we "must decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors." *Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). A remand is not necessary if "the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed." *Id.; see also United States v. McHugh,* 122 F.3d 153, 159 (2d Cir.1997) (Newman, C.J., concurring) ("[A] remand is not necessary in this case since Judge Pooler's sentencing remarks leave no doubt that she would reimpose a 12 month sentence . . . .").

Here, the district court made it clear that, in its view, a higher sentence would not be "fair and just," Sent. Tr. at 36. Thus, a remand for resentencing is unnecessary in this case as the record suggests that the district court would impose the same sentence on remand. If by chance we have assumed too much in this regard, the district court may so advise the parties, in which case a motion to recall our mandate would be warranted. *Cf. United States v. McHugh,* 122 F.3d at 159 (Newman, C.J., concurring).

### 5. *Conclusion*

For the foregoing reasons, the judgment of the district court is AFFIRMED.