13-417-cr
United States v. Kopstein

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: February 10, 2014     Decided: July 21, 2014)

Docket No. 13-417-cr

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

Appellee,

- v.-

SCOTT D. KOPSTEIN, AKA "MIKEHRNY,"

Defendant-Appellant.

- - - - - - - - - - - - - - - - - -x

Before:            JACOBS, LIVINGSTON, and LYNCH, Circuit Judges.

Scott D. Kopstein appeals from a judgment entered in the United States

District Court for the Eastern District of New York (Seybert, J.).  He argues that the

jury charge confused the jury as to entrapment, which was the sole defense.  For

the following reasons, we vacate Kopstein's conviction and remand for a new trial.

Judge LIVINGSTON dissents in a separate opinion.

NORMAN TRABULUS, New York, NY, for Defendant-Appellant.

WILLIAM P. CAMPOS, Assistant United States Attorney (Jo Ann M. Navickas, Assistant United States Attorney, on the brief) for Loretta E. Lynch, United States Attorney, Eastern District of New York, for Appellee.

DENNIS JACOBS, Circuit Judge:

Scott D. Kopstein was convicted by a jury, in the United States District Court for the Eastern District of New York (Seybert, J.), of transporting and shipping child pornography to a federal agent posing as a twelve-year-old girl during an electronic conversation in a "chat room." Kopstein did not deny that he possessed the images, but argued that he was entrapped into transporting and shipping them when the agent threatened to terminate the conversation (and Kopstein's sexual excitement) if Kopstein did not comply with the agent's repeated requests that he transmit child pornography.

Given Kopstein's trial strategy, it was critical that the jury be adequately instructed on entrapment, a defense that the district court deemed "surely . . . not frivolous." App. 235. A review of the trial transcript, however, reveals substantial jury confusion, made worse by supplemental jury instructions that: (1) could be understood to say that the jury could convict even if the entrapment defense was successful; (2) lacked consistent direction as to what must be "induced" to show entrapment; and (3) suggested that the government had to both "prove" and "disprove" entrapment. The instructions therefore failed to consistently and adequately guide the jury on Kopstein's only defense to the only charge that carried a mandatory minimum sentence.

We vacate Kopstein's conviction and remand for a new trial.

# I

In June 2009, Kopstein, a 20-year-old New York college undergraduate, initiated an instant message chat with an undercover federal agent posing as a 12-year-old girl in California.

Kopstein immediately turned the conversation toward sex. He repeatedly sent naked pictures of himself to the agent, and asked the agent to return the

3

favor.  See App. 22-23.  In response, the agent sent Kopstein a yearbook-style photo of a young girl; but Kopstein requested "more naughty pics."  Id.  When the agent said he did not have any, the following exchange ensued:

[Kopstein]: do u have any other pics?
[Agent]: yeah...what do i get out of it????????
[Kopstein]: i got some more naughty pics of me for you
[Kopstein]: if i can see more of u
[Agent]: u hav any w a girl
[Kopstein]: none of me with a girl
[Agent]: awwwww
[Kopstein]: but I have other people with other girls
[Agent]: any good ones
[Kopstein]: yea
[Kopstein]: if u send me more pics
[Kopstein]: ill show u alot

Id. at 24.  The agent responded by sending Kopstein a photo of a girl in a dress, and Kopstein detailed the sexual acts he wished to perform on the girl.  See id.

The agent quickly steered the conversation back to his request for child pornography:

[Agent]: thought u were gona send me some stuff
[Kopstein]: send me a few more pics
[Kopstein]: then ill send u alot
[Agent]: nope
[Kopstein]: okkk

Id. at 24-25.  Undiscouraged, Kopstein sent more pictures of himself, which prompted the agent to muse:

4

> [Agent]: sur got a lot of pics of urself
> [Agent]: hehehehhe

Id. at 25.

Only at that point did Kopstein send the agent child pornography. Id. Kopstein expressed hope that these images would sexually excite his chat partner, and the agent was enthusiastic: "i lik[e] pics like that"; "wow..that last pic was nice...she is cute." Id. The agent also expressed a fondness for videos that depict a young girl "and a guy having real fun," but Kopstein demurred: "its more fun to do it yourself." Id.

The rest of the chat consisted of Kopstein gloating about sexual experiences with an 11-year-old girl and expressing a desire to actually meet his chat partner for sex. See id. at 27-28. The agent sent additional inoffensive pictures of a young girl, and Kopstein responded with more images of child pornography. See id. at 25-28. Asked where Kopstein had found these pictures, Kopstein explained, "other people." Id. at 28. Soon after, Kopstein ended the chat. See id. at 29.

Federal agents thereafter seized Kopstein's computer and recovered many other images of child pornography. Kopstein signed an affidavit confessing to a habit of initiating "sexual conversations . . . with younger girls" and to sometimes trading pictures of himself for pictures of those girls (the images are not

characterized).  He added, however, that he "never shared [pictures of his chat partners] with anyone" else and never "met, talked to on the phone, or had sex of any kind[] with any underage girl."  See id. at 20-21.

**II**

Kopstein was charged with three counts of transporting and shipping child pornography.  Transport and shipment, unlike possession, is punishable by a five-year mandatory minimum sentence.  See 18 U.S.C. § 2252(b)(1).

At the three-day trial,  Kopstein's only defense was that he had been entrapped into transporting and shipping child pornography (though not into possessing it).  The theory was that the agent's request for "good" pictures of "girls," and the implicit threat that the agent would cut off the chat if Kopstein did not comply, induced Kopstein into sending the images, which he had no predisposition or inclination to do.

In summation, Kopstein's counsel conceded that Kopstein initiated the chat and that the government had proven "the underlying act: transporting and shipping."  App. 145.  He affirmatively invited the jury to convict Kopstein of the lesser-included offense of possession, for which Kopstein had no defense.  See id.

6

at 155. Counsel argued, however, that (1) the federal agent induced the transport and shipment conduct; and (2) the government did not prove beyond a reasonable doubt that Kopstein was predisposed to send the images. See id. at 146-52.

A unanimous jury found Kopstein guilty of transporting and shipping child pornography. In December 2012, the district court sentenced Kopstein to 66 months' imprisonment, adding six months to the mandatory minimum because Kopstein sent child pornography to a person he thought was a 12-year-old girl. See id. at 272.

**III**

"We review a jury instruction challenge de novo, but we will reverse only where the charge, viewed as a whole, demonstrates prejudicial error." United States v. Coppola, 671 F.3d 220, 247 (2d Cir. 2012). "Instructions are erroneous if they mislead the jury as to the correct legal standard or do not adequately inform the jury of the law." Hudson v. New York City, 271 F.3d 62, 67 (2d Cir. 2001) (internal quotation marks and alterations omitted). "Objectionable instructions are considered in the context of the entire jury charge, and reversal is required

where, based on a review of the record as a whole, the error was prejudicial or the charge was highly confusing." Id. at 67-68 (internal quotation marks and alteration omitted); see also Nat'l R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land, 766 F.2d 685, 688 (2d Cir. 1985) ("A charge that appears likely to have left the jury 'highly confused' may, on that ground alone, be reversed.").

We will vacate a conviction if the initial jury instructions are faulty, the jury expresses confusion, and the court's supplemental instruction fails to alleviate the jury's concerns or only adds to the already-existing confusion. For example, in United States v. Rossomando, we concluded, on plain-error review, that

> the court's initial charge posed a genuine risk of confusing the jury into believing that it would be proper to convict Rossomando . . . without finding that he [committed an essential element], and that the court's supplemental charge on intent did not adequately cure any such potential misperception. We therefore reverse the district court's judgment because we are not fully confident that the jury found Rossomando guilty of an essential element of [the crime], and because our doubts are sufficient to call into question the fairness and integrity of Rossomando's conviction.

144 F.3d 197, 200-01 (2d Cir. 1998) (citation omitted).

Even if an initial instruction is not itself erroneous or highly confusing, a supplemental instruction prompted by a jury question may be so muddled as to

8

warrant vacatur.  We have explained:

> If the court's instructions . . . had been confined to those contained in its original charge to the jury, a reversal would not be required. . . . However, in its supplemental instructions to the jury after deliberations had begun, the district court left the issue . . . in further confusion and thereby inadvertently undermined its earlier correct instructions . . . .  In short, the court's supplemental instructions to the jury were sufficiently incomplete and misleading so as to make the charge, viewed as a whole, inadequate . . . .

United States v. Hastings, 918 F.2d 369, 371-73 (2d Cir. 1990) (citations omitted);

see also United States v. Velez, 652 F.2d 258, 262 (2d Cir. 1981) ("Although

reluctant to upset a conviction because of an error in the supplemental charge, we

are constrained to reverse here because the trial court's failure to recharge the jury

on [an] element was both erroneous and highly prejudicial.").

A supplemental instruction can be a potent influence.  A jury's interruption

of its deliberations "to seek further explanation of the law" is a "critical moment

in a criminal trial"; and we therefore ascribe "crucial importance" to a

"completely accurate statement by the judge" at that moment.  United States v.

Lefkowitz, 284 F.2d 310, 314 (2d Cir. 1960).  "[T]he district court must exercise

special care to see that inaccuracy or imbalance in supplemental instructions do

not poison an otherwise healthy trial.  This is especially true since the judge's last

word is apt to be the decisive word."  Tart v. McGann, 697 F.2d 75, 77 (2d Cir.

9

1982) (internal quotation marks and citations omitted).

Unaddressed or aggravated juror confusion is almost certainly not harmless if it pertains to a defendant's "only" or "primary" defense.  See Velez, 652 F.2d at 262; Rossomando, 144 F.3d at 198.

## IV

"[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct."  Mathews v. United States, 485 U.S. 58, 63 (1988). The defendant bears the burden of presenting credible evidence of government inducement.  See United States v. Bala, 236 F.3d 87, 94 (2d Cir. 2000).  If the defendant sustains that burden, the prosecution must prove predisposition to commit the crime beyond a reasonable doubt.  See United States v. Al–Moayad, 545 F.3d 139, 153 (2d Cir. 2008).  The government may do so by demonstrating "(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the

inducement." Id. at 154 (internal quotation marks and alteration omitted).

The government relied on Kopstein's ready compliance, which "is usually indicated by the promptness of a defendant's agreement to commit an offense." United States v. Cromitie, 727 F.3d 194, 206 (2d Cir. 2013).

## V

## A

In deciding whether jury instructions are prejudicially erroneous or highly confusing, we evaluate them in the context of the entire record. See, e.g., Hudson, 271 F.3d at 67-68. We therefore discuss the jury instructions and their context at some length.

The initial entrapment charge, unchallenged on appeal, was as follows[1]:

> The defendant asserts as a defense to the indictment three counts of transporting and shipping child pornography that he was entrapped into committing those offenses by the undercover government agent. The defendant may not be convicted of a crime if it was the Government who gave the defendant the idea to commit the crime, if it was the Government who also persuaded him to commit the crime, and if he was not ready and willing to commit the crime before the

---

[1] This section appears, in relevant part, on page 42 of the instructions given to the jury. Passim, the court, counsel, and the jury referred to instructions by page number.

Government agent first was in communication with him.

On the other hand, if the defendant was already ready and willing to commit the crime of transporting and shipping child pornography, and the Government merely presented him with an opportunity to do so, that would not constitute entrapment.

Your inquiry on this issue should first be to determine if there is any evidence that the undercover agent took the first step that led to a criminal act of the defendant transporting and shipping child pornography. If you find there was no such evidence, there can be no entrapment, and your inquiry on this defense should end there.

If, on the other hand, you find some evidence that the undercover government agent initiated the criminal acts charged in the indictment, then you must decide if the Government has satisfied its burden to prove beyond a reasonable doubt that prior to that the defendant was ready and willing to commit the crimes of transporting and shipping child pornography.

If you find beyond a reasonable doubt that the defendant was predisposed, that is, ready and willing to commit transporting and shipping child pornography as charged, and merely was awaiting a favorable opportunity to commit those offenses, then you should find that the defendant was not entrapped.

On the other hand, if you have a reasonable doubt that the defendant would have committed the offenses charged without the Government's inducements, you must acquit the defendant of the crimes of transporting and shipping child pornography.

App. 187-88.

Confusion set in with the explanation as to the lesser included offense of

possession[2]:

> In some cases, the law which a defendant is charged with breaking actually covers two separate crimes. One is more serious than the second, and the second is generally called a lesser included offense.
>
> The indictment in this case charges the defendant with three counts of transporting and shipping child pornography, and I have explained to you the elements which the Government must prove beyond a reasonable doubt before you may convict him of that crime.
>
> *If you find that the Government has not satisfied its burden of proof on any of those elements, then before you may render a verdict of not guilty as to transporting and shipping child pornography, you must proceed to determine whether the defendant has committed the lesser crime of possession of child pornography.*
>
> On the other hand, if you find that the Government has proven the defendant's guilt beyond a reasonable doubt as to each of the three counts of transporting and shipping child pornography, you should stop deliberating and inform the Court before you consider the lesser included offense.

Id. at 188-89 (emphasis added). The emphasized passage ("before you may render a verdict") could be read to instruct that if the jurors find that Kopstein was entrapped into transporting and shipping child pornography (which would be a complete defense to that charge), they should not render a verdict of not guilty on that charge (the correct outcome) until *after* they had determined

---

[2] This section appears on page 44 of the instructions given to the jury.

13

whether Kopstein committed the lesser offense of possession.[3] That in turn could have misled the jury into thinking that it could return a verdict of guilty on the greater offense even if the prosecution had failed to prove a necessary part of its case, simply because Kopstein was guilty of the lesser offense. This source of potential confusion would recur throughout the instructions.

Right before the jury retired to deliberate, the court summarized its instructions as follows[4]:

> As I instructed you earlier, *if you find that the Government has not satisfied its burden of proof on any of those elements, then before you may render a verdict of not guilty as to transporting and shipping child pornography, you must proceed to determine whether the defendant has committed the lesser crime of possession of child pornography.*
>
> On the other hand, if you find that the Government has proven the defendant's guilt beyond a reasonable doubt as to each of the three counts of transporting and shipping child pornography, you should stop deliberating and inform the Court before you consider the lesser included offense.

Id. at 198-99 (emphasis added). Once again, the language could be misunderstood (as it was) to say that the jury should not *automatically* return a

---

[3] Maybe it was intended that the jury would understand that the "rendering" of the verdict would not take place until the jury's return to open court; but few lawyers and no laymen would intuit the distinction.

[4] This section appears on page 59 of the instructions given to the jury.

14

verdict of not guilty as to transporting and shipping even if the government failed to sustain its burden--while of course that is exactly what the jury was required to do if the entrapment defense was successful.

Kopstein's counsel objected that the instructions suggested to the jurors that "they should consider the lesser included [offense] if they find the defendant not guilty by reason of a failure to prove the elements. But it should also include a situation whether they find him not guilty, not just because of a failure . . . not to prove the elements, but . . . by reason of the defense of entrapment." Id. at 201. The government did not object and the court then told the jurors:

> Ladies and gentlemen, there's an issue I want to bring to your attention. I misspoke previously. On pages 44 and 59 of the charge that you will be getting, I failed to include the following instruction: If you find that the Government has not satisfied its burden of proof on any of those elements, or if you find that *the defendant has proven his defense of entrapment*, before you may render a verdict--

Id. at 202 (emphasis added). Kopstein's counsel objected on the ground that Kopstein was being assigned the burden of proof. Id. at 203. The Court acknowledged the objection, and continued:

> It should read on 44 and again on 59: If you find that the Government has not satisfied its burden of proof on any of those elements, or if you find that the Government has not disproved the defendant's defense of entrapment, then you must go on to consider the lesser included offense of . . . possession of child pornography.

15

> All right. Ladies and gentlemen, that will appear again on page 59, and I instruct you that the same rules apply. If the Government fails to prove beyond a reasonable doubt the elements of shipping or transporting child pornography, *or whether or not the Government failed to prove beyond a reasonable doubt that the defendant was not entrapped.* All right.

Id. at 203 (emphasis added). Thus, it remained muddled whether the jury must find the defendant not guilty of transport and shipment if the prosecution failed to prove its case or if the entrapment defense were successful. The last line of instructions the jury heard before entering deliberations did not help: "whether or not the Government failed to prove beyond a reasonable doubt that the defendant was not entrapped."

**B**

Shortly after deliberations began, the jury submitted a note requesting clarification regarding page 44 of the jury instructions, which discussed the lesser-included offense of possession. See id. at 206. The court asked the jury to be more specific, prompting this second note:

> Please clarify:
>
> p. 42 "If you find there was no such evidence there can be no entrapment and your inquiry on this defense should end there"
>
> p. 44 "or if the government has not disproved the defense of entrapment beyond a reasonable doubt, then before you may render

16

a verdict of not guilty"

If we find in favor of the page 42 instructions, do we consider the instruction on page 44 and if so what does it mean to "disprove the defense of entrapment"?

Id. at 225.

The referent of the phrase "[s]uch evidence" on page 42 is "any evidence that the undercover agent took the first step that led to the criminal act of the defendant transporting and shipping child pornography." But the jury is left to wonder what the "first step" was that "led to" the transporting and shipping of the images in question: Possession of the child pornography (Kopstein)? Initiation of the chat (Kopstein)? Sexual references (Kopstein)? Mention of pictures involving other "girl[s]" (the agent)? Request to transmit an image of a child being raped (the agent)?

The jury's cryptic note also reflects basic confusion about some critical points:

- The jury was wondering why it should not "render" a verdict for defendant if the government did not "disprove the defense of entrapment." Well might one wonder.

- The jury does not know what it means to "disprove the defense of

17

entrapment."  If it did not understand that, it understood nothing.

As the district court recognized, the jurors "are getting confused about the defense of entrapment, and they are coordinating it to inducement, which is understandable."  Id. at 208.

The note prompted colloquy between court and counsel on how to dispel the confusion.  Though the jury did not hear this discussion, the back-and-forth draws on some of the same sources of confusion that had appeared (and would reappear) throughout the transcript and reflects as well the active intervention of Kopstein's counsel (as well as the constructive role performed by the prosecutor):

> THE COURT: I was basically going to advise them if they initially decide--*if they do not initially determine beyond a reasonable doubt that the Government agent induced the criminal activity--*
>
> [Kopstein's counsel]: That reverses the burden.
>
> THE COURT: No, that makes it worse.  Let me redo this.  Initially *they have to decide whether or not the Government has proven beyond a reasonable doubt that the Government agent induced the criminal activity.*
>
> [Kopstein's counsel]: I think, your Honor, you said it correctly the first time --
>
> THE COURT: You have to show that the Government agent induced the defendant to engage in criminal activity.
>
> [Kopstein's counsel]: *But the defendant does not have to show that beyond a reasonable doubt.*

THE COURT: *No, the Government has to show that.*

[Kopstein's counsel]: All right.

[Prosecutor]: The Government has to show beyond a reasonable doubt that the defendant . . . was ready and willing to commit the crimes of transporting. That's what the Government has to prove beyond a reasonable doubt.

THE COURT: *And one of the elements of that is to establish that the Government agent induced the defendant to enter into the criminal activity.* Because if you don't have the inducement--

[Prosecutor]: We don't have to disprove the--

THE COURT: *No, you have to prove beyond a reasonable doubt that the Government agent induced--*

[Kopstein's counsel]: Did you mean to say "did not induce"?

[Prosecutor]: Your Honor, the defense of entrapment is that they claim there was an inducement.

THE COURT: Right. *You have to prove beyond a reasonable doubt that--*

[Prosecutor]:--that the defendant was, despite the claim of inducement, was nonetheless ready and willing to commit the crime.

[Kopstein's counsel]: Well, your Honor, they seem to be focusing first on the inducement.

THE COURT: Right. That's an element of entrapment.

[Kopstein's counsel]: Right. Right. . . . *I'm concerned they may think the first step is simply entering into a chat without regard whether the first step had anything to do with transporting.*

19

THE COURT: That they induced the defendant to send, transport, to ship the materials.

* * *

[Kopstein's counsel]: Obviously, the charge as given is correct, but I think they are confused. What I would suggest the Court do is to explain the language on page 42 means that if there is any evidence that the Government agent took the first step, that is, gave the defendant the idea to commit the crime and persuaded him to commit the crime, then you proceed to the issue of predisposition on which the Government bears the burden of establishing beyond a reasonable doubt that he was predisposed --

THE COURT: But there has to be some evidence.

[Kopstein's counsel]: Right. . . . I think that when they say "first step that led," they may think that is something different than giving the defendant the idea to commit the crime or persuading the defendant to commit the crime. *They may think the first step is meeting in a chat . . . . That is what led to this, notwithstanding that I may have been a government agent during the course of the chat who persuaded him to commit the crime.* That first step may be something different than the actual inducement, and that's why I'm worried about that question. I think as long as that is clarified, it will be pretty easy for them to follow this instruction. . . .

[Prosecutor]: That may be an interesting inquiry, but that is not the question posed. The question posed seems to confuse the issue on page 44 and the verbiage that was put in, which is disprove the defense of entrapment. The way that is done in the entrapment charge is by the Government's burden of proving beyond a reasonable doubt that defendant had a predisposition, that he was already willing and able to commit the act despite the inducement. *So this concept of disproving the defense of entrapment appears to confuse the jury in what the burden is on the Government-- . . .*

THE COURT: How about there must be some evidence of inducement that the Government agent took the first step to have the defendant transport, ship child pornography?

[Kopstein's counsel]: That's fine.

[Prosecutor]: Yes.

THE COURT: There's no problem with that. *The first step that led to a criminal act and so forth.* If you find there is no such evidence, there can be no entrapment, and your inquiry on this defense should end. If, on the other hand, you find some evidence that the undercover government agent initiated the criminal acts charged in the indictment, then you must consider if the Government had satisfied its burden beyond a reasonable doubt that prior to that the defendant was ready, willing and so forth. And that gets into the whole predisposition. Moving on to the lesser included, which is on page 44, we can list the elements what the Government would be required to disprove. Your position . . . is that the defendant wasn't predisposed to commit this crime.

[Kopstein's counsel]: Right, and that there was an inducement in the chat and by the agent. . . .

THE COURT: What about: The Government has failed to prove beyond a reasonable doubt that the defendant was not entrapped. I mean, that's what you have to prove. You have to disprove that he was entrapped. We tell them what entrapment is. In order for them to even consider entrapment, they have to find there was some evidence of inducement. If there is no evidence of inducement, they don't bother with entrapment.

[Prosecutor]: Correct. So what language?

THE COURT: At 44, the language would be: If you find that the Government has not satisfied its burden of proof on any of these

elements, or that the Government has failed to prove beyond a reasonable doubt that the defendant was not entrapped. . . . In order to find him not entrapped, they have to find, first, that there was some inducement.

[Prosecutor]: I don't disagree. I'm fine with that.

THE COURT: Hopefully, that will do it. We'll bring them out and give it.

Id. at 208-16 (emphases added).

When the jury was called back in, the following supplemental instruction was given:

With respect to page 42: Initially, before you even consider entrapment, you have to find that there has been presented in this case some evidence that the *defendant was induced by the Government agent to commit the criminal act, the first step in committing the criminal act of transporting child pornography and shipping child pornography.*

So again, there must be some evidence of inducement on the part of the Government agent *that this inducement caused the defendant to take the first step.* If there is no such evidence, or you conclude there is no such evidence based on the testimony, then you cannot consider entrapment, and your inquiry stops there.

Now, your next question relates to page 44: Or if the Government has not disproved the defense of entrapment beyond a reasonable doubt, then before you may render a verdict of not guilty . . .

*I know that is confusing.*

And you then go on to say: If we find in favor of the page 42 instruction, do we consider the instruction on page 44?

22

If, on page 42, you find that there was *some evidence of inducement by the Government agent and that this caused the first step to have the defendant transport or ship . . . child pornography*, if you find there is some evidence of that, then you consider entrapment. All right.

If you find there is no evidence of that, then forget about entrapment and disregard any mention of entrapment.

So look at page 42. Initially, make a determination whether there is some evidence of inducement, that is, *that the Government agent took the first step to have defendant transport and/or ship child pornography.*

Now, with regard to the instructions here, if you decide there is no inducement, disregard the instructions on entrapment, and then you go on to the next step, which is to decide whether or not the Government has proven each and every element of the transporting and shipping of child pornography beyond a reasonable doubt.

If you decide that the Government has proven this beyond a reasonable doubt on all three counts, then you report that to the Court.

If you decide that the Government has not proven it on all three counts, the three elements that I've told you about, then you let the Court know. And if you can't decide on all three counts, let me know.

If your verdict is not guilty on all three counts, then you can go on to consider the lesser included. If you can't decide on all three counts, then you come in and tell me you can't decide, and we'll go from there.

But if you decide that the Government has proven the defendant's guilt, once you get to the three counts, beyond a reasonable doubt, you tell me that, and you stop your deliberations.

23

So let's review for a moment.

On page 42, the first inquiry you make is whether or not there is some evidence of entrapment. *If you--I'm sorry, of inducement, not entrapment.* If you find there is some evidence *that the Government agent took the first step* to have the defendant transport or ship child pornography, *then you go on to consider the other elements as to whether or not the Government has proven entrapment and has disproven entrapment beyond a reasonable doubt.*

First off, is there some evidence of inducement?

If you find there is some evidence of inducement, you go on to consider whether or not the *Government has disproven beyond a reasonable doubt* that the other elements of entrapment which I've listed here apply.

In other words, if the defendant was already ready and willing to commit the crime of transporting and shipping child pornography, and the Government merely presented him with an opportunity to do this, all right. Then there's no entrapment.

First, look if there is some evidence of inducement. If you find there is no evidence of inducement, that stops the inquiry on entrapment. If you find there is some evidence of inducement *in that first step*, then you go on to decide whether or not the Government has proven to you beyond a reasonable doubt that the defendant was already ready, willing and able to commit the crime of transporting child pornography, and if the Government merely presented him with an opportunity to do so, that wouldn't constitute entrapment.

*If you decide this issue of entrapment, you go on to decide whether or not the Government has proved beyond a reasonable doubt the three elements--or the elements that I've outlined for you for transporting and shipping child pornography. If all those elements are met beyond a reasonable doubt, then you should convict the defendant and report your verdict.*

24

If you find beyond a reasonable doubt that the Government has not met that--if you find that the Government has not met that standard as to shipping and transporting, and if you unanimously agree that the defendant has not, for each of the counts, you will render a verdict in favor of the defendant.

If you cannot make up your mind on the three counts as guilty or not guilty, then you come in and report that to me.

Let me know if that helps or confuses you further.

Id. at 216-21 (emphases added).

Kopstein's counsel objected that the supplemental charge "indicated that even if [the jury] found entrapment, . . . [it] can still go on to consider transporting and shipping." Id. at 221. When the court told him that it was not the "sense of it," he backed down. Id. at 222-23. The jury soon after returned a unanimous guilty verdict.

**VI**

The jury instructions, including the supplemental instructions, drew upon multiple sources of confusion.

**A**

First, the jury's note reflects confusion regarding whether the "before you may render a verdict" language in the original instructions authorized a finding

25

of guilt *even if* the entrapment defense were successful or the government failed to sustain its burden of proof on an element of the offense. The supplemental instructions compounded the problem several times over by indicating that, however the jury decided entrapment, it should nevertheless proceed to consider the three elements of transport and shipment. See id. at 220 ("If you decide this issue of entrapment, you go on to decide whether or not the Government has proved beyond a reasonable doubt the three elements--or the elements that I've outlined for you for transporting and shipping child pornography. If all those elements are met beyond a reasonable doubt, then you should convict the defendant and report your verdict."). This could only increase the jury's already considerable confusion by indicating that entrapment was not a dispositive defense.[5]

**B**

Second, the court's supplemental instructions regarding inducement and the "first step" were inconsistent and problematic given the facts of this case.[6]

---

[5] It is undisputed by the government that Kopstein adequately raised this objection to the district court, which dismissed it because that was not the court's "sense" of the instruction's meaning. App. 223.

[6] Kopstein's counsel pointed out possible jury confusion regarding inducement and the "first step," but did not make a specific objection during or

26

At times, the court stated (in accord with model jury instructions) that the proper inducement inquiry was *whether the government agent took the first step*. See App. at 218 ("Initially, make a determination whether there is some evidence of inducement, that is, that the Government agent took the first step to have defendant transport and/or ship child pornography."); see also 1-8 Modern Federal Jury Instructions-Criminal 8.07 ("Your inquiry on this issue should first be to determine if there is any evidence that a government agent took the first step that led to a criminal act."). At other times, however, the court took for granted that Kopstein took the "first step," short-circuiting an inquiry it simultaneously assigned to the jury. See App. 217 ("So again, there must be some evidence of inducement on the part of the Government agent that *this inducement caused the defendant to take the first step*." (emphasis added)).

---

after the reading of the supplemental instructions. Review of this purported error is therefore governed by the plain error standard. See Fed. R. Crim. P. 30(d), 52(b). Even so, however, a confusing jury instruction on the defendant's sole defense will constitute plain error. See Rossomando, 144 F.3d at 203 (even though Rossomando's counsel expressed satisfaction with supplemental instruction, "because the court's initial charge could have utterly vitiated Rossomando's defense, and because the jury's request for further instruction is a concrete indication that it may in fact have done so, the failure of the supplemental charge to restore Rossomando's defense critically undermines our confidence in Rossomando's conviction, and warrants reversal for plain error").

27

Worse, unaided reference to the "first step" could not provide sufficient guidance to the jury, given the possibilities that the cognizable "first step" was the initiation of the chat, or the reference to sexual matters, or the proposal that child pornography be transported or shipped--or even possession of the images.

The entrapment defense contemplates "government inducement of *the* crime," Mathews, 485 U.S. at 63 (emphasis added), not government inducement of *a related* crime or *any* crime. Kopstein was clearly, and admittedly, not induced to *possess* child pornography and to initiate the chat, but that does not say whether Kopstein was induced to commit the offenses of conviction: i.e., transport and shipment of child pornography.

"The question of entrapment is generally one for the jury, rather than for the court." Id. Kopstein did not suppose that a child would want to look at child pornography, and expressed no interest in transporting it until the agent several times urged Kopstein to do so. So the initial question of fact was whether Kopstein was induced by the agent to transport and ship images of child pornography involving other individuals and victims.

As the district court observed, Kopstein's entrapment defense "surely was

28

not frivolous."[7] App. 235. But the undefined and inconsistent references to a "first step" offered insufficient guidance for the jury to untie the knotty issues of inducement. The court should have made clear that the critical inquiry concerned inducement of the transport and shipment, and not inducement of other conduct, however reprehensible.[8]

## C

In addition to these two underlying sources of confusion, another problem in the supplemental instructions could only have left the jury more perplexed: inconsistent pronouncements on whether the government was required to

---

[7] By observing that the defense was not frivolous, we do not mean to express any view about the ultimate merit of the defense. A properly instructed jury might well conclude that Kopstein's desire to see "more naughty pics" of the "girl" with whom he was corresponding, or to "see more of [yo]u," indicated a predisposition to engage, as a principal or as an inducer, in the transmission of child pornography. But the jury was not required to see the evidence in that light, and would have been equally entitled to conclude that Kopstein, left to his own devices and absent the prodding of the agent, would have contented himself with erotic "chat" and with the contemplation of his own collection of illegal child pornography.

[8] The prosecutor's trial summation urged the jury to speculate about what Kopstein would have done if his chat partner had been a real girl living nearby. See App. 158-59 ("And does anyone here think that if that location was on Long Island, this would only be a transportation of child pornography charge . . . ."). Kopstein does not challenge the prosecutor's line of argument on appeal, but the prosecutor thus invited speculation on a subject that would likely further distract the jury from the conduct charged.

"prove" entrapment or "disprove" entrapment. See, e.g., id. at 219 ("If you find there is some evidence that the Government agent took the first step to have the defendant transport or ship child pornography, then you go on to consider the other elements as to whether or not the Government has proven entrapment and has disproven entrapment beyond a reasonable doubt.").

**D**

The Government argues that, despite these errors and sources of confusion, the district court stated the standards correctly elsewhere in the transcript. We have, however, "reject[ed] the notion" that incorrect statements "are necessarily 'cured' so long as the charge contains the correct standard elsewhere. Our precedents do not stand for any such proposition. They emphasize, rather, that the instructions must be considered as a whole." Hudson, 271 F.3d at 70. Prudence counsels vacatur when the instructions become sufficiently confused, as we emphasized in a civil case:

> Reviewing [the judge's] instructions as a whole, we find the mention of the correct standard inadequate. After reading and rereading the charge, we conclude that it was confusing as to whether intent to do wrong was required to find a violation of Ellison's . . . rights. . . . In light of this confusion, we do not know whether a correctly charged jury would have rendered a different verdict. Under the circumstances, the prudent course is to vacate the judgment of the district court and to remand for a new trial.

30

Id. at 70-71. Clear and adequate jury instructions are no less important when a criminal defendant's liberty is at stake.

In sum, the jury instructions compounded the jury's bewilderment regarding Kopstein's only viable defense. "[B]ecause our doubts are sufficient to call into question the fairness and integrity of [Kopstein's] conviction," that conviction must be vacated. Rossomando, 144 F.3d at 200-01; see also Hastings, 918 F.2d at 373; Velez, 652 F.2d at 262.

**VII**

The dissent can be treated briefly:

- The revolting particulars of Kopstein's exchanges with the agent, set out fulsomely in the dissent, demonstrate only that there is enough here to justify rejection of the entrapment defense—which no one is disputing. But conviction itself was properly reserved to the jury, acting under sufficiently useful instructions. The dissent, discounting that procedural nicety, finds that Kopstein "was not entrapped, but utterly predisposed." Dissenting Opinion at 2. However, as the district court observed, Kopstein's entrapment defense was "surely . .

31

. not frivolous," App. 235, and even the government has not argued, either in the district court or on appeal, that it was.

- The dissent conflates two distinct questions of predisposition: (1) to *receive* sexualized images of the girl Kopstein met online, conduct with which he was *not* charged; and (2) the charged conduct, the *transport and shipment* of images of unrelated child pornography involving different girls. A jury might find, as the dissent does, that Kopstein's predisposition to engage in other conduct bears upon his predisposition to transport and ship the child pornography solicited by the government agent. Then again, a jury might find that it does not.

- The dissent glosses over the last ten words of the jury note: "what does it mean to 'disprove the defense of entrapment'"? Id. at 225. If the jury did not understand that, exactly what part of the entrapment defense *did* it understand?

- The dissent points out that the district court's use of "term[s] of abeyance" are blessed by model instructions and by the acquiescence of Kopstein's counsel during the reading of the initial instructions.

But the jury's later note specifically asked about the phrase "before you may render a verdict of not guilty," suggesting confusion about why it should not "render" a verdict for Kopstein if the government did not disprove the defense of entrapment. Further guidance became necessary; but the supplemental instruction could only have deepened the confusion: "If you decide this issue of entrapment, you go on to decide whether or not the Government has proved beyond a reasonable doubt the three elements . . . ." Id. at 220. At the risk of being obvious, this advice works only if the jury decides the issue of entrapment by finding there was none.

- The bouncing ball that a reader should follow going through the jury instructions is: the "first step." The dissent argues that there was not "any need to define" it, Dissenting Op. at 33, because Kopstein initiated all of them. That is not so, see supra Parts V.B, VI.B; but the argument proves too much, because, as the dissent recognizes, the jury could have considered as a first step Kopstein's "possession of the images," Dissenting Op. at 34, which may not be a first step to transporting or shipping them, and is in fact a different offense.

33

- The dissent sees no more than "minor" and "trifling misstatements," id. at 1, and takes them one by one to mitigate their impact: the "district court might better have said" something else, id. at 24; or a specific error is harmless, id. at 30 ("In essence, the inconsistency *favored* Kopstein and therefore did not prejudice him."); or a misstatement was "corrected," id. at 35. But a jury composed of laypersons cannot be expected to perform the work done in the dissent: grammatical parsing, subtle exegesis, rhetorical deconstruction, and editing for harmlessness. After all, two judges of this Court have found it difficult enough to follow the jury instructions, and with great respect it may be said that the 41-page dissent does not much dispel the confusion.[9]

## CONCLUSION

For the foregoing reasons, we vacate Kopstein's conviction and remand for a new trial.

---

[9] Rather than attempt reconciliation of the transcript excerpts in the two competing opinions, the interested reader is invited to proceed directly to the transcript and to simply read the instructions aloud, in full. See Appendix at 160-225, United States v. Kopstein, No. 13-417 (2d Cir. July 17, 2013), ECF No. 28.

34

DEBRA ANN LIVINGSTON, *Circuit Judge*, dissenting:

What the majority omits to mention is more revealing than what it says. The majority identifies three supposed errors in the jury instructions on entrapment. Of these, none were adequately preserved and two are sufficiently obscure as to go largely or even wholly unremarked by the appellant before this Court. Indeed, the principal language on which the majority focuses – and the *only* supposed error from the charge itself, as opposed to the supplemental charge in response to jury questions – was unsurprisingly complained of neither below nor even here, given that the supposedly misleading language was *specifically requested* by the defense at trial and, furthermore, comes nearly verbatim from Judge Leonard Sand's Modern Federal Jury Instructions. The language of this instruction is not error, either standing alone or, as the majority would have it, in conjunction with the minor misstatements in the supplemental charge on which the majority so avidly latches. The stringent requirements for plain error, *see United States v. Marcus*, 560 U.S. 258, 262 (2010), have not been approached, much less satisfied.

Simply put, this is a vacatur in search of a justification. The majority seizes on trifling misstatements in a supplemental instruction to conclude that a properly instructed jury – a jury whose note revealed scrupulous attention to the written

1

instructions sent with it into the jury room and deemed "[o]bviously . . . correct" by the defense – was somehow hopelessly confused on the issue of entrapment. The majority deems these trifles prejudicial, moreover, in the face of overwhelming evidence that appellant Scott D. Kopstein ("Kopstein"), convicted in the United States District Court for the Eastern District of New York on three counts of transporting and shipping child pornography in violation of 18 U.S.C. § 2252(a)(2), was not entrapped, but utterly predisposed.

In short, vacatur here is both unwarranted on the facts and inconsistent with our cases. The majority's attempt to explain its determination otherwise, moreover, only confuses precedent that is otherwise clear and easily applied. Indeed, if this conclusion were not evident from the arguments the majority makes – and it is – it could also be inferred from another buried detail: namely, that the majority, in laying out its argument for vacatur, relies on nearly as many lines of transcript from a colloquy between the judge and counsel *outside* of the presence of the jury, as lines of instruction given to the jury. This colloquy – albeit heavily relied upon by the majority – is irrelevant to its conclusion that instructional error requires the jury's verdict to be set aside. *See United States v. Sabhnani*, 599 F.3d 215, 240 (2d Cir. 2010) ("[O]ur concern on appeal is the *effect* of jury instructions"; thus, we consider "only"

2

instructions the "jury . . . heard."). For the reasons set forth herein, I respectfully dissent.

I

At the start, the majority's austere presentation of the facts shown at trial obscures evidence relevant to the strength of Kopstein's entrapment defense, and thus the question whether supposed instructional error prejudiced his trial. *See Marcus*, 560 U.S. at 262 (noting that vacatur on plain error review requires that error affect substantial rights). The following facts are drawn from the trial record.

According to his own signed statement, made after his arrest, Kopstein, for a period of three years, chatted online with "younger girls." The youngest of the girls was "probably 9." During these chats, Kopstein would "trade[] pictures of [himself] for pictures of [the underage girls]." Kopstein collected "an estimated 1000 pictures [and] videos" from these chats. Kopstein also admitted to using a file-sharing service to download pornographic videos and pictures, including child pornography. He saved "everything" from these chats in an untitled folder on his hard drive. At the time of his arrest, DHS agents searched Kopstein's hard drive and, despite Kopstein's attempt to delete them, agents recovered almost 200 images that appeared to contain child pornography.

3

Kopstein's conviction on three counts of transporting child pornography stems from the events of June 12, 2009. On that date, Kopstein entered an Internet chatroom looking for underage girls. Using the screen name "mikehrny," Kopstein began a conversation with Hopeinsac (actually Special Agent David Lombardi, of the Department of Homeland Security) by asking for her age, sex, and location.[1] Hopeinsac responded that she was female, twelve years of age, and lived in California. Kopstein thereafter turned the conversation to sex, inquiring of Hopeinsac whether she liked sex, whether she had "ever seen a dick?," had "suck[ed] it," and whether she wanted to see his. J.A. 22-23.

Less than nine minutes after commencing this conversation, Kopstein sent a picture of his penis to Hopeinsac. Kopstein in turn asked Hopeinsac if she would send him "pics." Before she could do so, Kopstein sent another pornographic picture to Hopeinsac, this time showing his penis in his hand. Again Kopstein asked to see a picture of Hopeinsac. Agent Lombardi transmitted to Kopstein a school picture of a twelve-year-old girl.

---

[1] I adopt the appellant's use of the feminine pronoun to refer to Hopeinsac, as portrayed by Agent Lombardi, because Kopstein perceived the person with whom he was "chatting" to be female. All chat exchanges are presented with the original spelling and grammar, except as edited for clarity.

4

Kopstein told Hopeinsac that this picture was "very sexy," but that he wanted more. Kopstein requested that she send him child pornography, imploring that "id love to see more naughty pics[.] [S]how me where to put my cock." J.A. 23. It was thus Kopstein – not Agent Lombardi – who first raised the prospect of transporting child pornography. Hopeinsac declined, stating that she did not "hav[e] any of thos[e]." J.A. 24. Kopstein, not deterred, asked Hopeinsac to *create* child pornography for him by photographing herself: "u could just take some, send them and then delete them." J.A. 24.

The conversation proceeded:

Kopstein:   do you have any other pics?
Hopeinsac: yea...what do i get out of it????????
Kopstein:   i got more naughty pics of me for you . . . if I can see more
                  of you
Hopeinsac: u hav any w a girl
Kopstein:   none of me with a girl
Hopeinsac: awwwww
Kopstein:   but i have other people with other girls
Hopeinsac: any good ones
Kopstein:   yea . . . if you send me more pics . . . ill show u a[ ]lot

J.A. 24. Notably, once Hopeinsac inquired whether Kopstein possessed any "good" pictures of "people with . . . girls" – a request which Kopstein argues on appeal was a request for pornographic images of children – it took Kopstein only *14 seconds* to

5

respond, "yea . . . ill show u a[ ]lot," affirming that he would transport child pornography across state lines.  J.A. 24.

Hopeinsac next sent Kopstein another non-pornographic picture of a young girl (purportedly a picture of Hopeinsac), to which Kopstein responded: "mmmm sexy body . . . id like to get under that dress."  J.A. 24.  Hopeinsac told Kopstein that she thought he was going to send her "some stuff."  Kopstein, for a second time, affirmed his commitment to transport child pornography: "[S]end me a few more pics . . . then ill send u a[ ]lot."  J.A. 25.

Hopeinsac declined, but nonetheless, *and only seconds later*, Kopstein sent two additional pornographic images of himself, then also transmitted his first image of child pornography.  This image depicted "a nude adult white male, [lying] on his back on the bed, with . . . a prepubescent nude female performing oral sex on him."  J.A. 67.  It took Kopstein less than eight minutes from the time Agent Lombardi purportedly requested child pornography until Kopstein transported the first image.

Kopstein then sent a second image of child pornography, this time depicting intercourse.  Kopstein commented that "this is what I wanna do to you [Hopeinsac]."  J.A. 25.  Kopstein expressed his interest in having sex with Hopeinsac again: "any guy that gets to fuck you would be a really lucky guy."  J.A. 26.  After

6

continuing this sexually explicit conversation, and without any specific request from Hopeinsac, Kopstein sent two more images depicting child pornography that formed the basis of Count I in the indictment. According to trial evidence, the photograph entitled "daddygetsblownp[1].jpg" depicts a prepubescent nude girl, no older than nine years old, performing oral sex on an adult male. The child is a victim known to law enforcement and the image is part of what is known as the "Helen series." J.A. 74-75. The photograph entitled "15 suck a thk one.jpg" depicts a girl of approximately ten or eleven and is part of the "Vickie series." J.A. 89. Shortly thereafter, Kopstein sent another image that, according to testimony from Agent Lombardi, depicted an adult male having intercourse with a prepubescent female. J.A. 76-77.

Kopstein next told Hopeinsac that he would "love to have u with another sexy girl like you." J.A. 27. Hopeninsac inquired if Kopstein had ever gone out with a "gurl [her] age." Kopstein replied, "yes," and said that "the youngest ive had sex with was 11."[2] Kopstein continued, "so id love to meet you in person one day and

---

[2] In his post-arrest statement, Kopstein said that he told girls with whom he chatted "about having sex with other younger girls," but asserted that these statements were untrue. J.A. 21.

7

show u a good time." Hopeinsac said that would be "kewl" but she lives in "cali." This did not deter Kopstein: "one day, ill come visit and make you cum." J.A. 27.

Kopstein, without any additional urging from Hopeinsac, then sent two additional photographs, which are the basis of Counts II and III in the indictment. Both were stipulated to contain child pornography. The first of these, a photograph entitled "%3Bkmcnkms%20%28162%29[1].jpg," depicts a naked prepubescent girl, between eight and twelve years old, being digitally penetrated in her vagina by a male adult hand. The image is part of a series commonly referred to as the "marine land series." J.A. 85-86. The second is a photograph entitled "09 yo 0003hard.jpg," which depicts a prepubescent girl, between the ages of ten and eleven years old, holding an erect penis. The child is known to law enforcement and the image is also part of the "Vickie series." J.A. 88-89. Kopstein sent a handful of additional pornographic images to Hopeinsac, including pictures of his own tumescent and then flaccid penis. J.A. 91-93. Kopstein then ended the chat by commenting, "lets do it again . . . ." J.A. 29.

II

During opening statements, Kopstein, through counsel, admitted to possessing child pornography and to transporting it electronically. Kopstein rested

8

his defense on entrapment. His attorney, having solicited and secured a lesser included offense instruction from the court, argued in closing that while the jury should convict Kopstein for possessing child pornography, Kopstein was not guilty of transporting and shipping child pornography because he was entrapped by Agent Lombardi to commit this crime. The jury, after three jury notes and about three hours of deliberation, rejected Kopstein's entrapment defense and convicted on the three charged counts of transporting and shipping.

In the majority's view, supposed errors in the jury instructions regarding entrapment require that the jury's verdict be set aside. As for the main instruction, however, Kopstein – who had the opportunity to review the court's charge before it was given – never even suggested below that the district court's instructions were erroneous. To the contrary, as Kopstein's lawyer affirmed at the time of the jury notes, "Obviously the [original] charge as given is correct . . . ." J.A. 211. And even on appeal, Kopstein concedes that these instructions "[made] clear that, if entrapment were not disproved, the jury was required to acquit on transporting and shipping" – directly contrary to the majority's position here.

As presently relevant, the district court initially charged the jury on entrapment as follows:

9

The defendant asserts as a defense to the indictment['s] three counts of transporting and shipping child pornography that he was entrapped into committing those offenses by the undercover government agent. The defendant may not be convicted of a crime if it was the Government who gave the defendant the idea to commit the crime, if it was the Government who also persuaded him to commit the crime, and if he was not ready and willing to commit the crime before the Government agent first was in communication with him.

On the other hand, if the defendant was already ready and willing to commit the crime of transporting and shipping child pornography, and the Government merely presented him with an opportunity to do so, that would not constitute entrapment.

Your inquiry on this issue should first be to determine if there is any evidence that the undercover agent took the first step that led to a criminal act of the defendant transporting and shipping child pornography. If you find there was no such evidence, there can be no entrapment, and your inquiry on this defense should end there.

If, on the other hand, you find some evidence that the undercover government agent initiated the criminal acts charged in the indictment, then you must decide if the Government has satisfied its burden to prove beyond a reasonable doubt that prior to that the defendant was ready and willing to commit the crimes of transporting and shipping child pornography.

If you find beyond a reasonable doubt that the defendant was predisposed, that is, ready and willing to commit transporting and shipping child pornography as charged, and merely was awaiting a favorable opportunity to commit those offenses, then you should find that the defendant was not entrapped.

On the other hand, if you have a reasonable doubt that the defendant would have committed the offenses charged without the Government's inducements, you must acquit the defendant of the crimes of transporting and shipping child pornography.

J.A. 187-88.

As already noted, Kopstein raised no objection to this entrapment instruction. He did request, however, that the jury be charged as to possession of child pornography, which Kopstein urged was a lesser included offense to the transportation of such material. Over the government's objection, the district court charged:

> In some cases, the law which a defendant is charged with breaking actually covers two separate crimes. One is more serious than the second, and the second is generally called a lesser included offense.
>
> The indictment in this case charges the defendant with three counts of transporting and shipping child pornography, and I have explained to you the elements which the Government must prove beyond a reasonable doubt before you may convict him of that crime.
>
> If you find that the Government has not satisfied its burden of proof on any of those elements, then before you may render a verdict of not guilty as to transporting and shipping child pornography, you must proceed to determine whether the defendant has committed the lesser crime of possession of child pornography.
>
> On the other hand, if you find that the Government has proven the defendant's guilt beyond a reasonable doubt as to each of the three counts of transporting and shipping child pornography, you should stop deliberating and inform the Court before you consider the lesser included offense.
>
> If you cannot reach a unanimous decision as to each of the three counts of transporting and shipping child pornography, you should likewise stop deliberating and inform the Court before you consider the lesser included offense.

J.A. 188-89.

11

The majority contends that the phrase "before you may render a verdict" in the instruction's third paragraph, by requesting that the jurors go on to consider the lesser included offense before returning a not guilty verdict on the more serious charge, could have misled the jury to "return a verdict of guilty on [the transporting and shipping counts] even if the prosecution had failed to prove a necessary part of its case." Maj. Op. at 14. But Kopstein's counsel not only raised no objection to this language – he specifically requested it (language derived directly from the Sand model charge):

> [Kopstein's counsel]: [T]he actual language from Sand says: ["]If you find that the government has not satisfied the burden of proof on any of the elements or if you cannot unanimously agree the defendant is guilty, then *before you may render a verdict* of [not] guilty you must proceed to determine whether the defendant has committed the lesser crime.["] . . . [W]e are asking for that language[,] if they can't agree[,] that they consider the lesser crime.

Trial Tr. 392 (emphasis added).[3]

Defense counsel did have one request in the wake of the lesser included charge – that it be amended to refer specifically to Kopstein's entrapment defense.

---

[3] The majority erroneously characterizes this Sand instruction as only "blessed . . . by the acquiescence of Kopstein's counsel during the reading of the initial instructions," Maj. Op. 33, when in fact the instruction was specifically requested by Kopstein's counsel who during this request, read this very instruction to the court.

Thereafter, as defense counsel requested, the district court instructed the jury that the original instruction (the text of which was provided to the jurors in the jury room) should be amended as follows:

> It should read on 44 and again on 59: If you find that the Government has not satisfied its burden of proof on any of those elements [concerning transportation and/or shipping], *or if you find that the Government has not disproved the defendant's defense of entrapment*, then you must go on to consider the lesser included offense of child – possession of child pornography.

J.A. 203 (emphasis added). The court reiterated: "All right. Ladies and gentlemen, that will appear again on page 59, and I instruct you that the same rules apply."

About one hour after deliberations began, the jury sent out two notes. The first note requested the transcript of the chat between Kopstein and Hopeinsac, as well as the images Kopstein transmitted to Hopeinsac. The second alerted the court that the jury "need[ed] clarifications on the Judge's instructions on page 44." J.A. 206. The court brought the jury back into the courtroom and asked for more detail regarding what was confusing to the jury. After returning to the jury room, the jury provided an explanatory third note:

> Please clarify[:]
>
> p[.]42 "If you find there was no such evidence there can be no entrapment and your inquiry on this defense should end there"

13

p[.]44 "or if the government has not disproved the defense of entrapment beyond a reasonable doubt, then before you may render a verdict of not guilty"

If we find in favor of the page 42 instruction do we consider the instruction on page 44 and if so what does it mean to "disprove the defense of entrapment"?

J.A. 225.

Read in context, the meaning of this note is clear. Page 42 of the instructions addressed the requirement that a defendant, to make out an entrapment defense, present credible evidence of inducement. *See Mathews v. United States*, 485 U.S. 58, 63 (1988) ("[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct."). Specifically, the jury was instructed on page 42 that its inquiry as to entrapment "should first be to determine if there is any evidence that the undercover agent took the first step that led to the criminal act of the defendant transporting and shipping child pornography." J.A. 187. The jury was then advised that "[i]f you find there was no such evidence, there can be no entrapment, and *your inquiry on this defense should end there.*" J.A. 187 (emphasis added).

14

The jury note thus obviously concerned the relationship between this instruction (that the jury should wholly discontinue consideration of the entrapment defense in the absence of evidence of government inducement) and the later instruction, on page 44, that it should consider the lesser included offense of possession of child pornography *if* the government failed to disprove entrapment. Given that the instruction on page 42, correctly read, advised jurors that absent evidence of inducement, they were never to reach the question whether entrapment had been disproved, the jurors' question as to the relationship between this instruction and the instruction on page 44 (to consider the lesser included offense if entrapment *was* disproved) makes perfect sense. Indeed, it suggests that the jurors closely scrutinized and understood the written instructions.

After discussion with the lawyers, the district court provided supplemental oral instructions to address the issue identified by the jury – oral instructions that concededly contain the minor misstatements onto which the majority latches. At the same time, however, these instructions address with clarity the issue about which the jurors actually requested assistance. The court answered the first question posed by the jurors in its explanatory note as follows:

> So look at page 42. Initially, make a determination whether there is some evidence of inducement, that is, that the Government agent

15

took the first step to have defendant transport and/or ship child pornography.

Now, with regard to the instructions here, if you decide there is no inducement, disregard the instructions on entrapment, and then you go on to the next step, which is to decide whether or not the Government has proven each and every element of the transporting and shipping of child pornography beyond a reasonable doubt.

J.A. 218. The district court then moved on to the second question:

So let's review for a moment.

On page 42, the first inquiry you make is whether or not there is some evidence of . . . inducement . . . . If you find there is some evidence that the Government agent took the first step to have the defendant transport or ship child pornography, then you go on to consider the other elements as to whether or not the Government has proven entrapment and has disproven entrapment [sic] beyond a reasonable doubt.

First off, is there some evidence of inducement?

If you find there is some evidence of inducement, you go on to consider whether or not the Government has disproven beyond a reasonable doubt that the other elements of entrapment which I've listed here apply.

In other words, if the defendant was already ready and willing to commit the crime of transporting and shipping child pornography, and the Government merely presented him with an opportunity to do this, . . . [t]hen there's no entrapment.

J.A. 219-20. The district court then summarized its answers to both questions posed

by the jury:

First, look if there is some evidence of inducement. If you find there is no evidence of inducement, that stops the inquiry on

16

entrapment. If you find there is some evidence of inducement in that first step, then you go on to decide whether or not the Government has proven to you beyond a reasonable doubt that the defendant was already ready, willing and able to commit the crime of transporting child pornography, and if the Government merely presented him with an opportunity to do so, that wouldn't constitute entrapment.

If you decide this issue of entrapment, you go on to decide whether or not the Government has proved beyond a reasonable doubt the three elements – or the elements that I've outlined for you for transporting and shipping child pornography. If all those elements are met beyond a reasonable doubt, then you should convict the defendant and report your verdict.

J.A. 220.

After these supplemental instructions, defense counsel asserted: (1) that the court may have misspoken at one point and indicated that even if the jury "found inducement or . . . some evidence of inducement, and then after applying the reasonable doubt standard . . . found there was entrapment," it could "still go on to consider transporting and shipping"; and (2) that the court also "may have said the Government has proven entrapment" when it meant to say "disprove." J.A. 221-22. With regard to the former point, however, as the majority states, defense counsel "backed down" when the court, after reviewing the instructions, stated that this was not the "sense" of them. Maj. Op. 26 (citing J.A. 222-23). Regarding the latter point,

17

defense counsel himself stated that counsel suspected the jurors realized the error, if it in fact occurred.  Shortly thereafter, the jury returned its guilty verdict.

III

The majority identifies three "sources of confusion" in the entrapment instructions that, it concludes, require vacatur.  To secure vacatur based on a flawed jury instruction, however, even a defendant who preserves his objection – and Kopstein did not even attempt to preserve the great bulk of the supposed instructional flaws on which the majority relies – "must demonstrate both error and ensuing prejudice."  *United States v. Quinones*, 511 F.3d 289, 313-14 (2d Cir. 2007).  Moreover, "[w]e emphatically do not review a jury charge 'on the basis of excerpts taken out of context,' but in its entirety to determine whether considered as a whole, 'the instructions adequately communicated the essential ideas to the jury.'" *Sabhnani*, 599 F.3d at 237 (quoting *United States v. Mitchell*, 328 F.3d 77, 82 (2d Cir. 2003); *United States v. Tran*, 519 F.3d 98, 105 (2d Cir. 2008)) (internal citations omitted); *see also Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.").  Judged by these standards, none of the three supposed errors identified

by the majority, either singly or in conjunction, justify its determination to set aside the jury's work.

**A. Lesser Included Offense Charge**

The majority first finds error in the lesser included offense instruction contained in the principal charge. The majority asserts that the district court's use of the phrase "before you may" on two occasions ("*before you may* render a verdict of not guilty") is an "instruction to put off acquittal" that "could have misled" the jury to convict on transporting and shipping even if the prosecution did not prove its case. The majority concludes that this supposed error, considered in conjunction with the other two, requires vacatur. Respectfully, I disagree.

At the start, this supposed error is not properly considered by this Court. For as already noted, Kopstein *requested* the lesser included offense instruction in its specific form: his counsel read the precise phrase onto which the majority latches, "before you may render a verdict," in his request to charge in the district court. *See* Trial Tr. 392. Kopstein then affirmed his agreement to the charge, as further amended at his own request.[4] Later, Kopstein conceded in the district court that

---

[4] At sidebar, after the instructions were initially read, Kopstein requested that the lesser included offense instruction be modified. Kopstein raised no objection to the "before you may render a verdict" phrase, however, having specifically asked for this

19

"[o]bviously, the [original] charge as given is correct . . . ."  And even here he admits that "the original instruction" made "clear that if entrapment were not disproved, the jury was required to acquit on transporting and shipping . . . ."  Appellant's Br. 33 & n.7.  Accordingly, Kopstein has waived the opportunity to challenge the instruction on appeal.  *See Quinones*, 511 F.3d at 321 ("A finding of true waiver applies with even more force when, as in this case, defendants not only failed to object to what they now describe as error, but they actively solicited it . . . ."); *United States v. Giovanelli*, 464 F.3d 346, 351 (2d Cir. 2006) (per curiam) ("[I]f a party invited the charge . . . , she has waived any right to appellate review of the charge."); *United States v. Young*, 745 F.2d 733, 752 (2d Cir. 1984) (holding that "not even the plain error doctrine permits reversal on the ground that the trial court granted a defendant's request to charge"); *see also United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009) ("[B]y agreeing that the [modified] instruction [proposed by the district court following an objection] was satisfactory, [defendant] waived the right to challenge the instruction on appeal.").

Even if this were not the case, however, vacatur is still wholly inappropriate,

---

language the day before.  He requested *only* that the instruction be altered to "include a situation" in which the jury found the defendant not guilty of the transporting and shipping charges "by reason of the defense of entrapment."  J.A. 201.  This modification was made and Kopstein raised no further complaint.

pursuant to the plain error standard. *See Marcus*, 560 U.S. at 262. As already noted, the phrase identified by the majority – "before you may render a verdict" – was derived verbatim from the lesser included offense charge in Sand's Modern Federal Jury Instructions. In fact, other than specifying the particular offenses at issue and including reference to the entrapment defense at Kopstein's request, the instruction is identical, word for word, to Judge Sand's model instruction. *Compare* Sand et al., Modern Federal Jury Instructions, Criminal Instruction 9-10 ("If you find that the government has not satisfied its burden of proof on any of those elements . . . , then, before you may render a verdict of not guilty, you must proceed to determine [the lesser included offense]."), *with* J.A. 189 ("If you find that the Government has not satisfied its burden of proof on any of those elements, then before you may render a verdict of not guilty as to transporting and shipping child pornography, you must proceed to determine [the lesser included offense]."). There is nothing erroneous about this pattern provision, much less does it constitute plain error.

The majority, cherry-picking the word "may" from the instruction, argues that the lesser included charge could suggest "that the jury should not *automatically* return a verdict of not guilty as to transporting and shipping even if the government failed to sustain its burden," either as to the elements or in disproving the entrapment

21

defense. Maj. Op. 15. With respect, I disagree. This contention simply ignores the extensive jury instructions given *before* the lesser included offense charge, thereby failing to read this language in context and as a whole, as our precedent requires. *See United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006) (noting that instructions are reviewed as a whole "to see if the entire charge delivered a correct interpretation of the law" (internal quotation marks omitted)); *accord Sabhnani*, 599 F.3d at 237.

Although wholly ignored by the majority, the district court had previously instructed the jury numerous times that the government must prove each element of the crime and also disprove entrapment, all beyond a reasonable doubt. In fact, no fewer than seven times did the district court make clear that the defendant *must* be acquitted if: (1) the government did not prove the elements of shipping and transporting beyond a reasonable doubt;[5] or (2) if the defendant's entrapment defense

---

[5] The court's instructions requiring the government to prove the elements of shipping and transporting beyond a reasonable doubt included:

- "I will instruct you as to . . . the specific elements that the Government must prove beyond a reasonable doubt to warrant a finding of guilt . . . ." J.A. 160.

- "If you have a reasonable doubt as to the guilt of the defendant, you should not hesitate for any reason to find a verdict of acquittal for the defendant." J.A. 167.

- "The burden is always upon the Government to prove guilt beyond a reasonable doubt. This burden never shifts to the defendant, for the law

22

was successful.[6] Given this context, the natural way to read the term "may" – as used both by the district court and in the Sand model instruction requested by Kopstein

never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." J.A. 168.

- "[Y]ou must be satisfied of the guilt of the defendant beyond a reasonable doubt before you may convict." J.A. 171.

- "In order to prove the defendant guilty of transporting child pornography, the Government must prove each of the following elements beyond a reasonable doubt. . . . The first element which the Government must prove beyond a reasonable doubt is that the defendant knowingly transported or shipped . . . a visual depiction. . . . The second element which the Government must prove beyond a reasonable doubt is that the visual depiction was mailed or transported . . . . The third element which the Government must prove beyond a reasonable doubt is that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct . . . . The fourth element that the Government must prove beyond a reasonable doubt is that the defendant knew both that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and that it portrayed a minor engaged in that conduct." J.A. 181-83, 186.

[6] The court's instructions requiring the jury to acquit if doubt remained as to whether the defendant was entrapped included:

- "The defendant may not be convicted of a crime if it was the Government who gave the defendant the idea to commit the crime . . . ." J.A. 187.

- "[I]f you have a reasonable doubt that the defendant would have committed the offenses charged without the Government's inducements, you must acquit the defendant of the crime of transporting and shipping child pornography." J.A. 188.

– is as a term of abeyance. If the jury found that the government did not prove all of the elements or did not disprove entrapment, then the jury was required to enter a verdict of not guilty, *but not until it considered the lesser included offense.* Indeed, this reading is so natural that Kopstein's counsel admitted below that it was correct and concedes in his brief on appeal that the original instructions made clear that "if entrapment were not disproved, the jury was required to acquit on transporting and shipping."

The majority seeks to avoid this result by seizing upon language, not from the main instruction, but from the supplemental one. It urges that language in the supplemental charge "compounded the problem" supposedly created by the requested model instruction by "increas[ing] the jury's already considerable confusion" with the suggestion that entrapment was not a dispositive defense. Maj. Op. 26-27. Again, I disagree.

The challenged language from the supplemental instruction is in italics:

First, look if there is some evidence of inducement. If you find there is no evidence of inducement, that stops the inquiry on entrapment. If you find there is some evidence of inducement in that first step, then you go on to decide whether or not the Government has proven to you beyond a reasonable doubt that the defendant was already ready, willing and able to commit the crime of transporting

24

child pornography, and if the Government merely presented him with an opportunity to do so, that wouldn't constitute entrapment.

*If you decide this issue of entrapment*, you go on to decide whether or not the Government has proved beyond a reasonable doubt the three elements – or the elements that I've outlined for you for transporting and shipping child pornography.

J.A. 220. Granted, the district court might better have said, in the supplemental charge, that if the jury decided the entrapment issue *in favor of the Government*, it should go on to address whether each element had been shown. But for the reasons stated above, the premise of the majority's argument for vacatur – that the failure to use such language somehow "compounded" a preexisting problem in the main instruction – is simply false. The original instructions, as requested by Kopstein, did not cause, and the jury's note did not reveal, any preexisting "considerable confusion" as to entrapment that the supplemental instruction could "increase." And without any preexisting confusion, the majority is left with one phrase in the supplemental instruction that was not as precise as it could have been. Considering that the instructions previously made clear that entrapment was a complete defense to transporting and shipping, this single phrase could not have produced confusion. *Cf. Brown v. Greene*, 577 F.3d 107, 111-12 (2d Cir. 2009) (collecting cases upholding jury charges containing imprecise language regarding burden of proof, because the

25

charges as a whole made clear that the cases were governed by the "beyond a reasonable doubt" standard); *United States v. Locascio*, 6 F.3d 924, 941 (2d Cir. 1993) (ambiguous summary of an element of a crime did not warrant reversal where earlier discussion of the element was clear). Accordingly, it is no basis for vacatur – a point the majority implicitly concedes by conflating this supposed error in the supplemental charge with a nonexistent error in the main instruction, based on language specifically requested by the defendant himself.

**B. Supplemental Charge**

The majority next determines that vacatur is required because the "supplemental instructions regarding inducement and the 'first step' were inconsistent and problematic given the facts of this case." Maj. Op. 27. There was no objection on this ground below, however, and the majority concedes that the plain error standard applies. It has not been satisfied.

As already noted, the district court's supplemental instruction addressed both of the questions posed in the jury's third note with precision.[7] As to the first, the jury

---

[7] Again, the third jury note reads as follows:

> Please clarify[:]
> p[.]42 "If you find there was no such evidence there can be no entrapment and your inquiry on this defense should end there"

26

wanted to know whether, *if* the jury found no inducement (*i.e.,* in favor of the instruction providing for no inducement), jurors then needed further to consider the entrapment defense. The district court accurately answered this question in the negative three separate times. *See* J.A. 218 (noting that if the jury found no evidence of inducement, it should "forget about entrapment and disregard any mention of entrapment").[8] The district court then answered the second question regarding disproving entrapment (although this was arguably unnecessary, given that the

---

p[.]44 "or if the government has not disproved the defense of entrapment beyond a reasonable doubt, then before you may render a verdict of not guilty"

If we find in favor of the page 42 instruction do we consider the instruction on page 44 and if so what does it mean to "disprove the defense of entrapment"?

J.A. 225.

[8] The two additional occasions where the district court answered this question correctly are set forth here:

[I]f you decide there is no inducement, disregard the instructions on entrapment, and then you go on to the next step, which is to decide whether or not the Government has proven each and every element of the transporting and shipping of child pornography beyond a reasonable doubt.

J.A. 218.

First, look if there is some evidence of inducement. If you find there is no evidence of inducement, that stops the inquiry on entrapment.

J.A. 220.

27

jurors wished to know "what . . . it mean[s] to 'disprove the defense of entrapment'" *only* if they were required to consider entrapment in the absence of inducement, which they were not).  The district court answered this second question accurately and completely two separate times.[9]

As we have said, "[a] supplemental charge is not defective where it responds adequately to the jury's request for clarification."  *United States v. Velez*, 652 F.2d 258, 262 (2d Cir. 1981) (citing *United States v. Viserto*, 596 F.2d 531, 539 (2d Cir. 1979)).  Accordingly, because the district court did answer the jury's third note accurately and completely, the cases relied on by the majority to justify vacatur – cases

---

[9] The court correctly instructed as follows:

> If you find there is some evidence of inducement, you go on to consider whether or not the Government has disproven beyond a reasonable doubt that the other elements of entrapment which I've listed here apply.
> In other words, if the defendant was already ready and willing to commit the crime of transporting and shipping child pornography, and the Government merely presented him with an opportunity to do this, all right. Then there's no entrapment.

J.A. 219-20.

> [D]ecide whether or not the Government has proven to you beyond a reasonable doubt that the defendant was already ready, willing and able to commit the crime of transporting child pornography, and if the Government merely presented him with an opportunity to do so, that wouldn't constitute entrapment.

J.A. 220.

28

involving supplemental instructions that failed to address the issue with which the jury was concerned, or that did so poorly, further confusing it – are simply inapposite. *See* Maj. Op. 8-9 (citing *United States v. Rossomando*, 144 F.3d 197, 202-03 (2d Cir. 1998) (vacating conviction because initial charge was erroneous and supplemental charge failed to fix the problem); *United States v. Hastings*, 918 F.2d 369, 371-73 (2d Cir. 1990) (vacating conviction because the district court failed to answer the jury's question whether knowledge was required to convict the defendant of illegal firearm possession)).

The majority seizes upon a supposed problem with the inducement instruction – a problem not raised in the jury note – to avoid this conclusion. The majority asserts that the supplemental inducement instruction was inconsistent as to the evidence necessary to satisfy the inducement requirement. *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000) (noting that defendant bears the burden of presenting "credible evidence of government inducement"). Specifically, although the court twice noted in the supplemental instruction (consistent with its advice in the main instruction) that the inducement inquiry involved the question whether "there is some evidence that the Government agent took the first step to have the defendant transport or ship child pornography," J.A. 218-19, the majority asserts that elsewhere

29

in the supplemental instruction the court "took for granted that *Kopstein* took the 'first step,'" – as in the instruction that "there must be some evidence of inducement on the part of the Government agent that this inducement caused *the defendant* to take the first step," Maj. Op. 28 (quoting J.A. 217) (emphases altered).

But Kopstein, in addition to not objecting below, *admits* before this Court that his counsel "did not object when the variations referring to Kopstein's first step were delivered" because "it was clear throughout that it was the agent who had to do the inducing and that it was Kopstein who had to be induced." Appellant's Br. 37. In essence, the inconsistency *favored* Kopstein and therefore did not prejudice him. The instructions (according to the majority) should have consistently required the jury to determine, as the main instruction charged, whether "there is any evidence that the undercover agent took the first step that led to a criminal act of the defendant transporting and shipping child pornography." *E.g.*, J.A. 187. But the instructions as given allowed the jury to find inducement if either (1) "the Government agent took the first step," J.A. 218, or (2) "inducement on the part of the Government agent . . . caused the defendant to take the first step," J.A. 217 – thus permitting the jury to find inducement *in support of Kopstein's defense* even if the government did *not* take the first step, as long as the government agent induced the defendant to do so. This

30

instruction thus expanded Kopstein's entrapment defense, causing him no prejudice and certainly failing to affect his substantial rights, as required in plain error review. *See Marcus*, 560 U.S. at 262.

The majority resists this conclusion, asserting first that a confusing jury instruction on the defendant's sole defense *ipso facto* constitutes plain error. Maj. Op. 27 n.6. But even if the inconsistency challenged here was confusing – a doubtful proposition, given that the district court's *written* instructions were consistent in this regard – potential confusion, standing alone, does not permit vacatur on plain error review. In *United States v. Marcus*, the Supreme Court said (reversing this Court) that an appellate court:

> may, in its discretion, correct an error not raised at trial *only* where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

560 U.S. at 262 (emphasis added) (brackets and internal quotation marks omitted). And "[l]ower courts," the Supreme Court has reminded us, "must apply [the plain error rule] as this Court has interpreted it." *Id.* It is thus *not* enough to assert that a supplemental instruction is inconsistent or even confusing in some respect. Having

31

declined to object below, Kopstein must demonstrate that the inconsistency *matters* by satisfying each criterion required for plain error review. He has not done so – not even close.

The majority disagrees, arguing that the supplemental instruction was not merely inconsistent as to the first step (whether the government must take the first step or induce the defendant to do so). Even worse, the instruction left the "first step" undefined. But the Sand model instruction given in the main charge and deemed "[o]bviously . . . correct" by the defense leaves "first step" undefined. Sand et al., Modern Federal Jury Instructions, Criminal Instruction 8-7. Moreover, our Court has specifically endorsed the Sand instruction on inducement. In *United States v. Dunn*, Judge Feinberg, writing for a unanimous panel, noted that instructions on entrapment "should be simplified" so as to "focus the jury's attention on the central issue presented by a claim of entrapment: Was the defendant 'ready and willing to commit the offense if given an opportunity to do so?'" 779 F.2d 157, 160 (2d Cir. 1985). To reach this central issue, the Court counseled, "there need only be some evidence of government initiation of the illegal conduct." The Court further advised, "[f]or a clear and concise instruction embodying this approach, see 1 L. Sand, J. Siffert, W. Loughlin, S. Reiss, Modern Federal Jury Instructions 8-24 (1984) (§ 8.07 –

32

Entrapment)." *Id.* And more recently, we stated in *United States v. Brand*, "Our conclusion that the district court did not err in defining entrapment is supported by the fact that the charge mirrors the model language from Sand's Modern Federal Jury Instructions – language we have previously approved." 467 F.3d 179, 205 (2d Cir. 2006) (citing *United States v. Han*, 230 F.3d 560, 565 (2d Cir. 2000)).

The majority cites no case law to support its suggestion that this instruction is deficient, for failing to specify what counts as government initiation of illegal conduct. To the contrary, it cites the same Sand instruction as "proper." Maj. Op. 28. There is thus no "clear and obvious" error here that arises from this lack of specification. *See Marcus*, 560 U.S. at 262 (noting that, among other requirements, error must be "clear or obvious" to constitute plain error). Nor is there any impact on the appellant's substantial rights. According to the majority, the district court was required to "ma[k]e clear that the critical inquiry concerned inducement of the transport and shipment, and not inducement of other conduct, however reprehensible." Maj. Op. 30. But this is precisely what the district court did – and without any need to define "first step." The court, in fact, aided the jury by making clear *four* separate times in the *supplemental instruction alone* that it was the transport and shipment of child pornography that the government must induce, not merely the

33

possession of child pornography or other reprehensible conduct. *See* J.A. 217 (referring to "the first step in committing the criminal act of transporting child pornography and shipping child pornography"); J.A. 218 ("the first step to have the defendant transport . . . and/or ship child pornography"); *id.* ("the first step to have defendant transport and/or ship child pornography"); J.A. 219 ("the Government agent took the first step to have the defendant transport or ship child pornography").

Finally, even if the district court *were* required to say what the first step in transporting child pornography was – although undoubtedly it was not – the failure to do so here was not prejudicial, let alone plainly erroneous. The majority lists the possible first steps about which it believes the jury was confused:"the initiation of the chat", the "sexual references", the proposal that child pornography be transported or shipped – or even possession of the images. Maj. Op. 17.[10] But choosing any one of these steps would not have changed the outcome here because it was Kopstein, not Agent Lombardi, who initiated each of them. Kopstein took up the chat and first referenced sexual matters. *See* J.A. 22. He possessed the images. And it was also Kopstein who first proposed that child pornography be transported or shipped – a

---

[10] The majority asserts that the agent requested Kopstein to "transmit an image of a child being raped." Maj. Op. 17. No such thing occurred.

detail the majority overlooks. After sending multiple adult pornographic photos to a person he believed to be a child, Kopstein solicited Hopeinsac to send to him a "naughty pic[ ]" that would "show me where to put my cock." J.A. 22. Thus, even if the district court had instructed the jury that one of these particular steps was *the* step the government agent had to undertake, for inducement to be found, the result would not have been different. The district court's election not to specify the first step – consistent with the case law and the better approach to entrapment – was not error, much less plain error prejudicing the defendant's substantial rights.

**C. Burden Regarding Entrapment**

In a single sentence, the majority contends, finally, that the supplemental instructions created a "problem" by inconsistently pronouncing "on whether the government was required to 'prove' entrapment or 'disprove' entrapment." Maj. Op. 30. The majority itself appears embarrassed to deem this error, and for good reason. The "problem" at issue relates to a single line in the supplemental instruction:

> On page 42, the first inquiry you make is whether or not there is some evidence of . . . inducement . . . . If you find there is some evidence that the Government agent took the first step to have the defendant transport or ship child pornography, then you go on to consider the other elements as to whether or not the Government *has*

35

*proven entrapment and has disproved entrapment* beyond a reasonable doubt.

J.A. 219 (emphasis added). The district court here made a misstatement, which it recognized and promptly corrected – though the majority refuses to make this simple inference from the transcription of the proceedings before us. Moreover, the majority fails to mention that the supplemental instructions correctly placed the burden of disproving entrapment on the government at least five times. Indeed, even Kopstein's attorney acknowledged that any error was inconsequential: referring to this slip of the tongue, defense counsel stated just thereafter that "I think there was [a] place, also, where you may have said the Government has proven entrapment. And I think what you meant to say was disprove. But I suspect that [the jurors] realize that." J.A. 221-21. Indeed Kopstein – but not the majority – continues to maintain this position on appeal, conceding that the district judge here "immediately corrected herself." Appellant's Br. 22.

In the face of all this, the majority fails to identify the standard of review (plain error), the prejudice to the defendant (none), the error that is plain (none), or how the plain error, assuming there was one, seriously affects the fairness, integrity, or public reputation of judicial proceedings (it would not). As we have repeatedly

36

said, jury charges are not to be read "on the basis of excerpts taken out of context," but in their entirety, to see whether the instructions "adequately communicated the essential ideas to the jury." *Sabhnani*, 599 F.3d at 237 (internal quotation marks omitted). By the majority's reasoning, *any* misspoken portion of a sentence by a district judge – even if "immediately corrected" and, sensibly, not objected to – could constitute a reason to grant a defendant a new trial. There was no error here, much less error justifying vacatur.

IV

Although not necessary to my conclusion, I note, finally, that the supposed errors on which the majority relies were utterly harmless – so that even assuming, contrary to the record, that these errors were properly preserved, vacatur is still inappropriate.[11] *United States v. Naiman*, 211 F.3d 40, 51 (2d Cir. 2000) (noting that a conviction will be set aside for error in jury instructions only "if the instructions, viewed as a whole, caused the defendant prejudice"); *see also United States v. Ekinci*, 101 F.3d 838, 843 (2d Cir. 1996) (noting that prejudice is examined in light of the

---

[11] Vacatur on plain error review is similarly barred because there was no effect on Kopstein's substantial rights. *See Marcus*, 560 U.S. at 262.

evidence and the "erroneous instruction in the context of the instructions as a whole").

To succeed on his affirmative defense of entrapment, Kopstein was first required to "present[ ] credible evidence of government inducement." *Bala*, 236 F.3d at 94. Provided this element was shown, the prosecution then was required to prove predisposition beyond a reasonable doubt, in order to disprove entrapment. *United States v. Al-Moayad*, 545 F.3d 139, 153 (2d Cir. 2008). No rational jury, applying this law, would have found that Kopstein was entrapped.

As to inducement (and as noted already), the defendant need only point to credible evidence of inducement, a burden we have properly characterized as "relatively slight." *United States v. Mayo*, 705 F.2d 62, 67 (2d Cir. 1983). But as we have also said, this obligation "should not be treated as a hollow requirement," and a defendant "cannot simply point to the government's use of an undercover agent" to satisfy it. *Brand*, 467 F.3d at 190. Here, contrary to the majority's implication that it was the *government* who initiated Kopstein's crimes by first suggesting the electronic transmission of child pornography, Kopstein first suggested this crime by requesting that a purported twelve-year-old send him a photograph showing him "where to put my cock." Thus (and by any of the definitions of "first step" to which

the majority points) the evidence overwhelmingly shows that Kopstein was not induced and that any supposed error in the inducement instructions was harmless.

Even if this were not the case, however, any rational jury would find that the government proved that Kopstein was predisposed in light of (1) his existing course of criminal conduct prior to the crime charged and (2) his ready willingness to commit the crime, as evidenced by his prompt response to Agent Lombardi's supposed inducement. *See United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995). As to his existing course of conduct, Kopstein admitted to possessing child pornography and to having numerous sexual chats with girls as young as nine over a three-year period. He admitted both to sending these girls images of himself and to requesting that they send him images. Nearly two hundred images depicting apparent child pornography were recovered from his computer.

All this is in addition, moreover, to the evidence that Kopstein (1) sought out Hopeinsac; (2) turned their conversation to sex within minutes of encountering her; (3) repeatedly sent her unsolicited images of his penis; and (4) within fifteen minutes of beginning their encounter, implored her to create and transmit to him a pornographic image of herself showing him "where to put my cock." This conduct

took place before *any* suggestion by the agent that Kopstein transmit images of underage girls.

The majority is thus reduced to claiming that a rational jury could conclude that Kopstein, who solicited the transport of child pornography in the early part of his conversation with Hopeinsac, was not predisposed to commit the offense moments thereafter. The majority is wrong. Kopstein's request that Hopeinsac engage in sexually explicit conduct and produce and transport visual depictions of such conduct – "take some, send them and then delete them," J.A. 24 – overwhelmingly establishes his predisposition to transport child pornography and, indeed, to engage in an even *more* serious crime (production of child pornography) requiring a mandatory minimum sentence of 15 years imprisonment. *See* 18 U.S.C. § 2251(a); *see also United States v. Broxmeyer*, 708 F.3d 132, 139 (2d Cir. 2013) (Jacobs, J., dissenting from denial of rehearing *en banc*) ("[U]nder 18 U.S.C. § 2251(a), by asking [the victim] (without success) to take nude photos of herself, [the defendant] became guilty of attempting to [cause a minor to] 'engage in . . . sexually explicit conduct for the purpose of producing [a] visual depiction of such conduct.'").

Kopstein also readily acceded to what he asserts was the government inducement here – namely, the agent's inquiry whether Kopstein possessed "good"

pictures of any "girls." Kopstein agreed to commit the criminal conduct of transmitting child pornography *within fourteen seconds* of the moment he asserts he was induced, and began transmitting child pornography to a purported twelve-year-old girl minutes thereafter. *See Jacobson v. United States*, 503 U.S. 540, 550 (1992) ("Had the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner – who must be presumed to know the law – had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction."). Thus, Kopstein's course of criminal conduct was not, as the majority would have it, consistent with the theory that Kopstein had "no predisposition or inclination" to transport child pornography. No rational jury would find otherwise.

## CONCLUSION

In sum, I disagree with the majority's analysis and with its conclusion. The majority fails to read the instructions in context and as a whole. It neglects to explain how any properly preserved error prejudiced Kopstein and it wholly disregards the Supreme Court's admonition in *Marcus* that we are to apply the plain error rule "as [the Supreme Court] has interpreted it," and not as we see fit. 560 U.S. at 262. There is no basis for vacatur. Accordingly, I respectfully dissent.

41